**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 15-cv-0127-WJM-CBS

ROCKY MOUNTAIN WILD, INC., a Colorado non-profit corporation,

      Plaintiff,

v.

UNITED STATES FOREST SERVICE, a federal agency, and
UNITED STATES DEPARTMENT OF AGRICULTURE, a federal agency

      Defendants.

---

**ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS
AS MOOT, GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT, AND GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

      This is a lawsuit under the Freedom of Information Act ("FOIA").  *See* 5 U.S.C.

§ 552.  Plaintiff Rocky Mountain Wild, Inc. ("Rocky Mountain Wild") alleges that

Defendant United States Department of Agriculture and its subsidiary, Defendant

United States Forest Service (jointly, "the Forest Service"), have not properly responded

to a November 2014 FOIA request for various documents.  (*See* ECF No. 1.)

      Currently before the Court are three motions:

1.     Rocky Mountain Wild's Motion for Judgment on the Pleadings (ECF No.
19);

2.     The Forest Service's Motion for Summary Judgment (ECF No. 36); and

3.     Rocky Mountain Wild's Cross-Motion for Partial Summary Judgment (ECF
No. 38).

For the reasons explained below, the Motion for Judgment on the Pleadings is denied as moot and the parties' dueling summary judgment motions are both granted in part and denied in part.

## I.  BACKGROUND

A private entity known as the Leavell-McCombs Joint Venture ("LMJV") owns a parcel of former Forest Service land near the base of the Wolf Creek Ski Area in southern Colorado.  (ECF No. 36 at 2, ¶ 1.)[1]  In 2010, LMJV and the Forest Service began exploring a land exchange that would expand LMJV's holdings in the region: about 177 nonfederal acres for 205 federal acres within the Rio Grande National Forest near the Wolf Creek Ski Area.  (*Id.* at 3, ¶ 6.)  Apparently LMJV wishes to create a large ski-oriented development known as "the Village at Wolf Creek."  (ECF No. 1 ¶ 3.)  The Forest Service therefore began the process of developing an environmental impact statement ("EIS") for the proposed land exchange.  (ECF No. 36 at 3, ¶ 7.)

In February 2014, before the EIS process was complete, Rocky Mountain Wild submitted a FOIA request to the Forest Service.  (ECF No. 39-1 at 2.)  Rocky Mountain Wild sought the Forest Service's communications with third parties regarding the Wolf Creek project.  (*Id.*)  The Forest Service's alleged failure to adequately respond to that FOIA request led to what this Court will refer to as the "2014 Lawsuit," *i.e.*, *Rocky Mountain Wild, Inc. v. U.S. Forest Service et al.*, 14-cv-2496-WYD-KMT (D. Colo., filed Sept. 9, 2014).  Senior U.S. District Judge Wiley Y. Daniel presides over the 2014 Lawsuit, which is ongoing.

---

[1] All ECF page citations are to the page number in the ECF header, which does not always match the document's internal pagination.

On November 20, 2014, the Forest Service published its Final EIS and Record of Decision for the Wolf Creek land exchange proposal.  (ECF No. 36 at 3, ¶ 8.)  Later that same day, Rocky Mountain Wild submitted another FOIA request to the Forest Service. (*Id.* ¶ 9.)  Whether that new FOIA request was a completely independent request or simply a follow-up to the February 2014 request is disputed, as discussed below in Part III.B.  In any event, Rocky Mountain Wild once again concluded that the Forest Service had not responded adequately, and so filed this action.  The action was originally assigned to Judge Daniel, but he exercised his prerogative as a senior judge to return the case for reassignment, leading to the undersigned's assignment.  (*See* ECF Nos. 4–6.)

Since this action was filed, the Forest Service claims to have released "more than 12,000 pages of documents" to Rocky Mountain Wild.  (ECF No. 36 at 6, ¶ 19.) Rocky Mountain Wild and others have also filed a third lawsuit against the Forest Service, which the Court will refer to as the "APA Lawsuit," *i.e.*, *Rocky Mountain Wild et al. v. Dallas et al.*, 15-cv-1342-WYD (D. Colo., filed June 24, 2015).  The APA Lawsuit, presided over by Judge Daniel, substantively challenges the Forest Service's November 2014 EIS.

## II.  SUMMARY JUDGMENT STANDARD FOR FOIA CLAIMS

"FOIA actions are typically decided on motions for summary judgment."  *Info. Network for Responsible Min. v. Bureau of Land Mgmt.*, 611 F. Supp. 2d 1178, 1182 (D. Colo. 2009).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a).

In evaluating the pending motions, "two guiding principles apply. First, FOIA is to be broadly construed in favor of disclosure. Second, its exemptions are to be narrowly circumscribed." *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1226 (10th Cir. 2007). In other words, "disclosure, not secrecy, is [FOIA's] dominant objective." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (internal quotation marks omitted).

## III.  ANALYSIS

### A.    Allegations of Bad Faith

At the outset, the Court must address Rocky Mountain Wild's repeated argument that nothing the Forest Service says is trustworthy when it comes to its assertions about its document production efforts, its reasons for withholding documents (*see* Part III.C, *infra*), and so forth. Rocky Mountain Wild bases this argument on three items of evidence.

First, Rocky Mountain Wild submits a collection of 31 documents obtained through a FOIA request to the United States Fish & Wildlife Service. (ECF No. 37-6.) All of the documents are communications between Forest Service and Fish & Wildlife employees, and are variously dated between 2011 and 2013. They are not found in any production made by the Forest Service to Rocky Mountain Wild. Rocky Mountain Wild claims that "[t]he Forest Service admitted [in the 2014 Lawsuit that it] failed to retain many of the[se] documents." (ECF No. 37 at 6, ¶ 16.)

Second, Rocky Mountain Wild points to an August 2012 e-mail chain between

various Forest Service employees.  (ECF No. 50-4.)  No party has provided context for

the e-mail chain, but the end of the chain includes an exchange exclusively between

two employees in which one of them appears to recommend deleting e-mails to avoid

having to disclose them under FOIA:

> Dan's main concern wasn't the letter, but the emails around
> the letter that might be a little damaging in the event they are
> not all deleted in case we get a foia....remember we are
> swimming with sharks and need to keep e-mails from even
> the remote appearance of whatever, so make sure you burn
> this once read!

(*Id.* at 1 (ellipses in original).)

Third, Rocky Mountain Wild cites a January 2013 e-mail from Forest Service

employee Randy Ghormley to various other Forest Service employees, including an

attorney in the Forest Service's Office of General Counsel named Kenneth Capps.

(ECF No. 37-10.)  Ghormley appears to be discussing a memorandum of some sort

justifying a particular decision.  Regarding that memorandum, Ghormley says,

> I had Rick send that to me hardcopy so it would not be
> subject to FOIA (is that correct?).  Rick's brief write-up is
> worth a review/discussion in my opinion so I wanted to get
> your thoughts on this.  If you would like to review this 1 page
> document of "justification points" please let me know and I'll
> have Rick send it electronically through an email with Ken
> [Capps] as a cc so it will remain attorney-client privilege[d]
> and not subject to FOIA from what I understand.  If this isn't
> a concern and you want to see it anyways I can scan and
> share.

(*Id.* at 3.)  Within minutes of receiving this e-mail, Capps replied to all recipients

regarding Ghormley's FOIA concerns:

> I don't think you need to go through any gyrations to attempt
> to keep the document from being subject to FOIA.  It is
> subject to FOIA right now but we'd deny any request for it

> under the deliberative process privilege until the ROD is
> issued, then, it would most likely be released.

(*Id.* at 2.)

The foregoing evidence naturally raises eyebrows, but the Court finds it insufficient to create a presumption of bad faith or general lack of trustworthiness. Rocky Mountain Wild points to no FOIA requests pending when any of this evidence was generated, and Rocky Mountain Wild has cited no authority for the implicit proposition that the Forest Service had a duty under FOIA to preserve records absent a pending FOIA request. *Cf. Kim v. U.S. Dep't of the Interior*, 859 F. Supp. 2d 13, 18 (D.D.C. 2012) ("although . . . courts have occasionally sanctioned an agency for destroying responsive documents in FOIA litigation, in those cases the destruction occurred after the FOIA request was made").

Furthermore, the "burn this once read" e-mail—to the extent it was meant seriously rather than tongue-in-cheek—obviously was preserved, not destroyed. And Ghormley's notion that copying an attorney on a communication would automatically protect the communication under the attorney-client privilege was quickly disabused by the attorney himself. Thus, Rocky Mountain Wild has not presented a record sufficient for this Court to infer that the Forest Service's representations about its document collection efforts are untrustworthy.

**B.    Reasonableness of the Forest Service's Search for Records**

1.    Did the Forest Service Reasonably Interpret Rocky Mountain Wild's Request?

The parties dispute whether the Forest Service properly understood the scope of documents requested by Rocky Mountain Wild.

Through its November 20, 2014 FOIA request, Rocky Mountain Wild sought

> copies of the Administrative Record made for the November 20, 2014 Draft Record of Decision and Environmental Impact Statement for the Village at Wolf Creek Access Project, including all communications and records of communications between the Forest Service and outside entities relating to the Village at Wolf Creek Access Project, including but not limited to, communications related to the preparation of the Environmental Impact Statement (EIS), Endangered Species Act consultation, Army Corps of Engineers reviews, and other federal, state, and local government reviews and approvals.

> In particular, this request seeks all as-yet undisclosed agency records created or obtained by the Forest Service concerning the proposed Village at Wolf Creek Access Project including communications between:

> · The Forest Service and other federal, state or local agencies;

> · The Forest Service and the Leavell/McCombs joint partnership and their associates;

> · The Forest Service and Tetra Tech or other third-party contractor or similar entities engaged in preparing the EIS or portions thereof;

> · The Forest Service and any members of the public;

> · The Forest Service and any other external entity.

> * * *

> As Staff Attorney for Rocky Mountain Wild, I am filing this request because it is important for the citizens in the region to understand how the Forest Service has been communicating with other agencies regarding this project. . . .

(ECF No. 36-2 at 2–3.)

Given the emphasis on third-party communications, the Forest Service argues in its summary judgment motion that Rocky Mountain Wild's request extended only to Forest Service communications with third parties, not intra-Service communications. (ECF No. 36 at 11–12.)  The Forest Service further argues that the extent of its search for documents should be deemed reasonable because it in fact searched for, and in some cases disclosed, intra-Service communications as well, even though not requested.  (*See id.*)

Rocky Mountain Wild responds that it actually requested all documents of any type related to Wolf Creek, not just communications.  (ECF No. 37 at 13; *see also* ECF No. 38 at 9–10.)  Rocky Mountain Wild argues that "the scope and method of the [Forest Service's] search would have been drastically different" had the service "based its search on the clear language" of the FOIA request.  (ECF No. 37 at 13.)  The Forest Service replies by pointing out that the request at issue here is nearly identical to February 2014 request under review in the 2014 Lawsuit.  (ECF No. 39 at 7–8.)

The following table reproduces relevant portions of the February 2014 request alongside the November 2014 request at issue here, with underlining and line breaks added to emphasize the similarities and differences between the two:

| February 27, 2014 FOIA Request (14-cv-2496, ECF No. 15-3 at 2–3): | November 20, 2014 FOIA Request (this case, ECF No. 36-2 at 2–3): |
|---|---|
| Under the Freedom of Information Act, 5 U.S.C. § 552, Rocky Mountain Wild, San Juan Citizens Alliance and San Luis Valley Ecosystem Council request copies of | Under the Freedom of Information Act, 5 U.S.C. § 552, Rocky Mountain Wild, San Juan Citizens Alliance and San Luis Valley Ecosystem Council request copies of the Administrative Record made for the November 20, 2014 Draft Record of Decision and Environmental Impact Statement for the Village at |

| | Wolf Creek Access Project, including |
|---|---|
| all communications and records of communications between the Forest Service and outside entities relating to the Village at Wolf Creek Access Project, including but not limited to, communications related to the preparation of the Environmental Impact Statement (EIS), Endangered Species Act consultation, Army Corps of Engineers reviews, and other federal, state, and local government reviews and approvals. | all communications and records of communications between the Forest Service and outside entities relating to the Village at Wolf Creek Access Project, including but not limited to, communications related to the preparation of the Environmental Impact Statement (EIS), Endangered Species Act consultation, Army Corps of Engineers reviews, and other federal, state, and local government reviews and approvals. |
| In particular this request seeks all<br><br>agency records created or obtained by the Forest Service concerning the Village at Wolf Creek Access Project after January 1, 2008 that involves [*sic*] communications between: | In particular, this request seeks all as-yet undisclosed agency records created or obtained by the Forest Service concerning the proposed Village at Wolf Creek Access Project including communications between: |
| · The Forest Service and other federal, state or local agencies; | · The Forest Service and other federal, state or local agencies; |
| · The Forest Service and the Leavell/McCombs joint partnership and their associates; | · The Forest Service and the Leavell/McCombs joint partnership and their associates; |
| · The Forest Service and Tetra Tech or other third-party contractor or similar entities engaged in preparing the EIS or portions thereof; | · The Forest Service and Tetra Tech or other third-party contractor or similar entities engaged in preparing the EIS or portions thereof; |
| · The Forest Service and any members of the public; | · The Forest Service and any members of the public; |
| · The Forest Service and any other external entity. | · The Forest Service and any other external entity. |
| * * * | * * * |
| As Senior Staff Biologist at Rocky Mountain Wild, I am filing this request because it is important for the citizens in the region to understand how the Forest Service has been communicating with other agencies regarding this project. . . . | As Staff Attorney for Rocky Mountain Wild, I am filing this request because it is important for the citizens in the region to understand how the Forest Service has been communicating with other agencies regarding this project. . . . |

Given that the only changed circumstance between the two requests was the publication of the Final EIS on November 20, 2014 (*see* ECF No. 36 at 3, ¶ 8), the Forest Service argues that it reasonably viewed the second request as simply a follow-up to the first.  (*See* ECF No. 39 at 7–9.)  Rocky Mountain Wild counters that language such as that in the second paragraph ("all as-yet undisclosed agency records . . . including communications between") could not be more clear that the second request is a demand for every document of every kind, not just communications.  (*See* ECF No. 50 at 13–14.)

The parties' arguments turn on some fairly basic FOIA principles.  A FOIA requester must "reasonably describe[]" the records sought, 5 U.S.C. § 552(a)(3)(A)(I), and the responding agency "may appropriately refrain from disclosing" materials that are "outside the scope of [the] request," *Trentadue*, 501 F.3d at 1233 n.6.  Nonetheless, Congress enacted the "reasonably describes" language specifically to replace a prior statutory standard ("request for identifiable records") that agencies had been using to justify withholding records not requested with specificity.  *Truitt v. Dep't of State*, 897 F.2d 540, 544 & nn.26–27 (D.C. Cir. 1990).  "Reasonably describes" was therefore intended to "'make[] explicit the liberal standard for identification that Congress intended.'"  *Id.* at 545 (quoting relevant Senate report).  In short, "an agency . . . has a duty to construe a FOIA request liberally."  *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995).  Nonetheless, "an agency processing a FOIA request is not required to divine a requester's intent."  *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003).

Applying these standards, the Court finds under the unique circumstances of this case that the Forest Service reasonably interpreted the November 2014 request, even under a duty of liberal construction.  If the November 2014 request had been the first or only request, Rocky Mountain Wild would have an easier time arguing that its literal meaning (much less its liberal meaning) clearly expresses an intent to seek all documents of every type, not just communications or, even more specifically, communications with third parties.  To be sure, the November 2014 request expresses a purpose to educate "citizens in the region" regarding how "the Forest Service has been communicating with other agencies regarding this project" (ECF No. 36-2 at 3), suggesting a narrower focus.  But "a FOIA request might reasonably seek all of a certain set of documents while nonetheless evincing a heightened interest in a specific subset thereof."  *LaCedra v. Exec. Office for U.S. Attorneys*, 317 F.3d 345, 348 (D.C. Cir. 2003).  Thus, in isolation, the November 2014 request could not be reasonably interpreted as limiting itself to third-party communications.

But the Forest Service is correct that the context of the February 2014 request is relevant to the November 2014 request.  Most notably:

1.     the February 2014 request was plainly aimed at "communications";

2.     the February and November 2014 requests are nearly identical;

3.     both the February and November 2014 requests focus heavily on the third parties who might have been involved in such communications; and

4.     the November 2014 request retains the February 2014 request's statement of purpose (to help "citizens in the region understand how the Forest Service has been *communicating with other agencies* regarding

11

[Wolf Creek]" (emphasis added))—and not solely as a cut-and-paste artifact from the February 2014 version, given that the statement of purpose was edited in November 2014 to specify the new requester's title ("Staff Attorney" rather than "Senior Staff Biologist").

Thus, the Forest Service unsurprisingly interpreted the November 2014 request for "all as-yet undisclosed agency records . . . including communications between [the Forest Service and various third parties]" as an extension of the February 2014 request's temporal scope, rather than a new request with an independent scope.

Nonetheless, when an agency learns that it has misunderstood the scope of a request, it has a duty to adjust its records search accordingly.  *See Truitt*, 897 F.2d at 545–46.  That duty does not extend to requesters who try to slip in a new request under the guise of clarifying an outstanding request.  *Cf.* 5 U.S.C. § 552(a)(3)(A)(ii) (mandating that requests be "made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed"); *Thomas v. Office of the U.S. Attorney for E.D.N.Y.*, 171 F.R.D. 53, 55 (E.D.N.Y.1997) (FOIA requester cannot add to or enlarge underlying FOIA request during pendency of request or litigation).  However, in circumstances where the original request encompasses documents that the agency has never searched (or chooses to withhold) due to a good faith misunderstanding of the request, the agency cannot continue to refuse to search or disclose.

The D.C. Circuit's *Truitt* decision is a good illustration of this concept.  A historian, Marc Truitt, submitted a FOIA request to the State Department for information regarding "Anglo-American policies and activities toward Albania during World War II and thereafter."  897 F.2d at 541–42.  In communications between Truitt and the State

Department, the State Department came to understand, incorrectly, that Truitt was not interested in a particular file designated "File 767." *Id.* at 543. Truitt, however, discovered File 767 in the National Archives and noticed that portions of the file had been intentionally removed. *Id.* He then asked for the State Department to locate and examine the removed portions and to disclose them or provide a basis for nondisclosure. *Id.* The State Department refused and insisted that it had completed the search required of it by Truitt's request. *Id.* at 545. The D.C. Circuit found

> no cause to doubt the Department's sincerity in that regard. But the fact of the matter was that the Department was mistaken, for there were responsive documents in File 767 . . . . In that situation, as hitherto we have announced, what is expected of a law-abiding agency is that it admit and correct error when error is revealed. Having learned of Truitt's interest in the documents removed from File 767, it could not justify its inertia simply on the claim that Truitt had not manifested it earlier.

*Id.* at 545–46 (internal quotation marks and footnote omitted).

The situation here is substantially similar. Through an honest misunderstanding, the Forest Service apparently performed a too-narrow records search (*i.e.*, for "communications" only), and has also chosen to withhold certain records as outside of the scope of the search (*i.e.*, intra-agency communications). However, having learned of its misunderstanding, the Forest Service cannot continue to insist on that misapprehension as the proper interpretation of Rocky Mountain Wild's request.[2]

---

[2] The misunderstanding in *Truitt* apparently came to light before litigation commenced, while the misunderstanding in this case only came to light through summary judgment briefing. Even so, the Court sees no reason to excuse the Forest Service from its duty to perform a proper search. There may be a point where an honest misunderstanding surfaces far too late in litigation to trigger the agency's burden to revisit the request, but that is not the case here.

In these circumstances, summary judgment for the Forest Service is not appropriate.  *See id.* at 543.  Rather, the Court will order the Forest Service to perform a search for all responsive records, including intra-agency communications, but not limited to communications.  Fortunately, the Forest Service appears to have already searched for much of this material and is simply withholding it as outside the perceived scope of the request.  Thus, the Forest Service may only need to revisit what it has already gathered and decide whether to disclose it or to claim a FOIA exemption on a new *Vaughn* index.

> 2.    Did the Forest Search Adequately Search for Communications With Third Parties?

Although third-party communications were only a subset of what Rocky Mountain Wild requested, the Forest Service certainly searched for them, disclosing some and claiming a FOIA exemption for others.  Thus, the Court may evaluate the propriety of summary judgment on that particular aspect of Rocky Mountain Wild's request.

The record reveals that the Force Service limited its initial document search to certain custodians through whom, it believed, all relevant communications would have been routed.  (ECF No. 36 at 4–5, ¶ 11(d)–(f).)  Since then, developments in the 2014 Lawsuit prompted the Forest Service to expand its search, including to additional custodians in local offices and certain custodians in its Washington Office.  (*See* ECF No. 39 at 10 n.2; ECF No. 46 at 5–7.)  This suggests that the Forest Service has continued to become aware of additional potential custodians.

Rocky Mountain Wild also asserts that other individuals exist whose records should be searched.  (*See, e.g.*, ECF No. 37 at 7–8, 14; ECF No. 50 at 11–12.)  In only

three places, however, does Rocky Mountain Wild identify specific custodians whose records have not been searched (or not fully searched), or specific offices where additional records are likely to be found.  (*See* ECF No. 37 at 8, ¶ 5 (listing 15 individuals); ECF No. 50 at 11, ¶ 10 ("Aver that the Chief's Office and the Undersecretary are also likely to possess responsive records, but were not searched."); *id.* at 11–12, ¶ 13 ("Aver that . . . agency decisionmaker Dan Dallas[] is not listed among the persons who conducted a manual search.").)  The Court will refer to these as the "Specific Requests."

The remainder of Rocky Mountain Wild's requests cite generically to collections of letters and e-mails that supposedly reveal custodians whose records have not been searched.  (*See* ECF No. 37 at 7–8, ¶¶ 3, 7; ECF No. 50 at 11–12, ¶ 13.)  Each of these communications has a sender and one or more recipients, but Rocky Mountain Wild has made no effort to delineate those senders or recipients that might be searched in addition to its Specific Requests.  Accordingly, the Court presumes that the Specific Requests comprise the potential custodians in which Rocky Mountain Wild is genuinely interested.[3]

This Court must "evaluate[] the reasonableness of an agency's search based on what the agency knew at its conclusion rather than what the agency speculated at its inception."  *Friends of Blackwater v. U.S. Dep't of Interior*, 391 F. Supp. 2d 115, 121 (D.D.C. 2005) (internal quotation marks omitted).  Given that the Forest Service has

---

[3] Or, in any event, it is not this Court's duty to examine these dozens of documents, extract the names of all of the senders and recipients, and then compare that list of names to the names of those who have already searched for documents and those mentioned in Rocky Mountain Wild's Specific Requests.

continued to find additional custodians and documents as this case has progressed, and given FOIA's broad purpose in favor of public access, *see Trentadue*, 501 F.3d at 1226, the Court cannot grant summary judgment to the Forest Service on the question of whether the Forest Service adequately searched for communications with third parties.  The Court will order the Forest Service to search the individuals and locations named in Rocky Mountain Wild's Specific Requests, both for responsive third-party communications as well as responsive intra-agency communications, and any other responsive record, whether embodied in a communication or not.[4]

## C.    FOIA Exemptions

FOIA specifies nine categories of documents that an agency need not disclose.  *See* 5 U.S.C. § 552(b).  The Forest Service has submitted three *Vaughn* indices[5] covering various groups of documents, and demonstrating that it is withholding documents under Exemption 5, Exemption 6, and because of its understanding that Rocky Mountain Wild had not requested intra-agency communications.  (*See* ECF Nos. 46-1, 46-5, 46-6.)

This Court is required to review *de novo* the Forest Service's claimed exemptions or other reasons for withholding documents.  *Anderson v. Dep't of Health & Human*

---

[4] The Forest Service has never argued that Specific Requests would present an undue burden.  *Cf. Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999) ("if an agency has reason to know that certain places may contain responsive documents, it is obligated under FOIA to search barring an undue burden").  Nonetheless, the Court finds that it would be excessive under the circumstances to grant Rocky Mountain Wild's request that the Forest Service search all relevant employees' personal e-mail accounts, cell phones, and other areas of personal data storage.  (*See* ECF No. 37 at 16.)  The Forest Service need not extend its search that far.

[5] A *Vaughn* index is the FOIA equivalent of a privilege log.  *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).

*Servs.*, 907 F.2d 936, 941 (10th Cir. 1990).  If the *Vaughn* index "is insufficient" to permit such review, the Court "must utilize other procedures in order to develop an adequate factual basis for review of the agency action."  *Id.* at 942.  Such "other procedures" are within this Court's discretion, and may take the form of *in camera* inspection of all disputed documents or a sample of them, "further discovery," or a supplemental *Vaughn* index.  *Id.*

With these standards in mind, the Court will address in turn each of the Forest Service's bases for withholding.

     1.   <u>Exemption 5</u>

Exemption 5 allows the agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C § 552(b)(5).  This exemption embodies, among other things, the attorney-client privilege.[6]  The Forest Service's *Vaughn* indices show that the Forest Service is holding back numerous documents, or portions of documents, under the attorney-client privilege.  (*See* ECF Nos. 46-1, 46-5, 46-6.)

Whether a *Vaughn* index is sufficient to justify withholding turns in large part on how it describes the reasons for withholding.  If it "merely parrot[s] the language of the statute" or is "drawn in conclusory terms," then "the court's responsibility to conduct de novo review is frustrated."  *Anderson*, 907 F.2d at 942 (internal quotation marks omitted).

Here, two of the *Vaughn* indices (ECF Nos. 46-1 and 46-6) justify the Forest Service's withholdings.  These indices contain sufficiently specific explanations, of which

---

[6] It also embodies the deliberative process privilege, which the Forest Service originally asserted but has since waived.  (*See* ECF No. 46 at 9, ¶ 21.)

the following are examples:

- "Email chain containing OGC attorney legal advice and OGC attorney edits for legal sufficiency to draft text provided by F[o]rest Service contractor. OGC edits contain legal impressions and attorney work product[.]"  (ECF No. 46-1 at 13.)

- "Email chain between Forest Service personnel and OGC attorney providing legal advice regarding section 7 of the ESA.  [S]ubsequent emails in the chain forward legal advice to other Forest Service personnel[.]"  (*Id.* at 20.)

- "Attachment is a confidential draft provided for legal review of a document that is near the top of the decision making progress.  Comparison of the draft with the final would reveal the changes made after legal review."  (*Id.* at 44.)

- "Mike Blakeman makes a confidential comment to Mr. Capps relating to changes to an internal briefing paper regarding the environmental analysis of the Wolf Creek Project for higher level Forest Service officials."  (ECF No. 46-6 at 1.)

- "Maribeth Gustafson asks OGC attorney Ken Capps for legal advice relating to the Wolf Creek Project, and Mr. Capps responds.  Forest Service employees Ken Tu and Jim Bedwell give their opinion regarding Mr. Capps's opinion, which is also confidential information relating to legal advice sent or received from the Forest Service."  (*Id.* at 2.)

The Court is satisfied that the Forest Service properly withheld the documents logged on

these *Vaughn* indices, and summary judgment to the Forest Service is granted to that extent.

By contrast, the Forest Service's other *Vaughn* index (ECF No. 46-5) contains nothing but generic (if not boilerplate), conclusory assertions, such as the following:

- "The withheld material consists of confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice.  The withheld portions consist of a set of facts provided by the client to the attorney, and the attorney's legal advice that is based on those facts."  (ECF No. 46-5 at 7.)

- "The withheld material consists of confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice.  The withheld portions consist of a set of facts and opinions provided by the client to the attorney."  (*Id.* at 8–9.)

- "The withheld material consists of confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice.  The withheld portions consist of facts provided by the client to the attorney."  (*Id.* at 12.)

Such descriptions "frustrate[]" this Court's "responsibility to conduct de novo review." *Anderson*, 907 F.2d at 942 (internal quotation marks omitted).  The Court will deny summary judgment to the Forest Service as to the documents logged on this *Vaughn* index.

Given that the two *Vaughn* indices discussed above demonstrate the Forest

Service's ability to prepare a proper index, the Court will order the Forest Service to

prepare a new version of ECF No. 46-5 with more-detailed descriptions of the reasons

for withholding.

2.    Exemption 6

FOIA permits agencies to withhold "personnel and medical files and similar files

the disclosure of which would constitute a clearly unwarranted invasion of personal

privacy."  5 U.S.C. § 552(b)(6).  On this basis, the Force Service redacted data such as

employees' cell phone numbers, personal e-mail addresses, and so forth.  Rocky

Mountain Wild has made no objection to these redactions, and thus has effectively

confessed Defendants' motion as to Exemption 6.  Accordingly, the Court will grant

summary judgment to the Forest Service to the extent it has redacted information under

Exemption 6.

3.    "Non-Responsive"

The Forest Service's *Vaughn* index filed at ECF No. 46-5 contains a number of

listings for documents that it previously chose to withhold under the deliberative process

privilege, and continues to withhold even though it has waived the deliberative process

privilege.  For these documents, the Forest Service explains that they are "non-

responsive" because they are intra-agency communications, and therefore supposedly

outside the scope of Rocky Mountain Wild's FOIA request.  (*See, e.g.*, ECF No. 46-5

at 13.)  As already explained above in Part III.B.1, this position is a misunderstanding of

Rocky Mountain Wild's request.  Accordingly, the Forest Service cannot continue to

withhold such documents as non-responsive.  If the Forest Service wishes to continue

20

withholding any such document, it must explain its decision in the updated *Vaughn* index ordered above.  Otherwise, it must disclose the document.

## D.    Pattern or Practice Claim

Rocky Mountain Wild asserts a claim for "a pattern and practice of not complying with FOIA's statutory requirements until litigation is filed."  (ECF No. 1 ¶ 28.)  The Forest Service claims that there is no such thing as a pattern or practice claim under FOIA, and, if it exists, Rocky Mountain Wild has not presented sufficient evidence of it.  (ECF No. 36 at 23–24.)  Rocky Mountain Wild counters that such a claim exists and that it has established the Forest Service's violation as matter of law.  (ECF No. 38 at 18–22.)  The Court finds that it need not definitively decide whether a pattern or practice claim exists. Although certain circuits recognize it, Rocky Mountain Wild has not presented evidence sufficient to establish it under the law of those circuits.

Thus far, it appears that only the Ninth and D.C. Circuits have explicitly recognized a cause of action for a pattern or practice of FOIA violations.  *See Payne Enters., Inc. v. United States*, 837 F.2d 486, 490–94 (D.C. Cir. 1988); *Long v. IRS*, 693 F.2d 907, 909 (9th Cir. 1982).[7]  In *Long*, the IRS admitted to a practice of making spurious FOIA exemption claims and requiring the requester to file suit before it would "'voluntarily' release[] the documents."  *Long*, 693 F.2d at 908.  The requester sought injunctive relief to prevent this delaying tactic.  *Id.*  The district court concluded that injunctive relief was unavailable, but the Ninth Circuit reversed:

---

[7] An unpublished Tenth Circuit disposition acknowledged a FOIA plaintiff's argument for a pattern or practice claim but found the record insufficient to support it.  *Liverman v. OIG*, 139 F. App'x 942, 944–45 (10th Cir. 2005).

> In utilizing its equitable powers to enforce the provisions of the FOIA, the district court may consider injunctive relief where appropriate.  Moreover, where the district court finds a probability that alleged illegal conduct will recur in the future, an injunction may be framed to bar future violations that are likely to occur.

*Id.* at 909.

The *Payne* case is similar.  There, a certain Air Force division repeatedly and "perfunctorily" invoked two FOIA exemptions as to certain documents even after the Secretary of the Air Force repeatedly and "without exception ordered disclosure because neither FOIA exemption applied to the [requested] material."  837 F.2d at 487.  In other words, similar to the IRS's tactic in *Long* of requiring a requester to file a lawsuit, lower Air Force officials in *Payne* would not cooperate until the requester invoked the administrative appeal process.  The D.C. Circuit found this sufficient to justify injunctive relief against the Air Force if, on remand, the district court found a "likelihood that the Air Force will return to its illicit practice of delay in the absence of an injunction."  *Id.* at 495.

Rocky Mountain Wild's attempts to fit the present case into the mold of *Long* and *Payne* are unpersuasive.  Rocky Mountain Wild presents several reasons it believes a pattern or practice claim is justified (*see* ECF No. 38 at 19–22), but most of those reasons turn on a mistaken premise.  Specifically, Rocky Mountain Wild, which has submitted a number of FOIA requests to the Forest Service over the last decade, accuses the Forest Service of repeatedly failing to meet a 20-day deadline established in 5 U.S.C. § 552(a)(6)(A)(i):

> Each agency, upon [receiving] any [FOIA] request for records . . . shall * * * determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the

22

> receipt of any such request whether to comply with such
> request and shall immediately notify the person making such
> request of such determination and the reasons therefor.

Rocky Mountain Wild appears to believe that this provision establishes a 20-day deadline to disclose documents.  (*See* ECF No. 38 at 19 (referring to this as "the timely access requirement"); *see also* ECF No. 19 ¶ 30 ("FOIA contemplates 20 days from the date of the request for disclosure of information").)  Rocky Mountain Wild accordingly attempts to analogize its situation to *Long* and *Payne* because it was required to file a lawsuit to finally gain access to the requested records.  But the underlying assumption is incorrect.

An agency's requirement under the statute to "determine . . . whether to comply with [a FOIA] request," 5 U.S.C. § 552(a)(6)(A)(i), is not a requirement to produce responsive records at the same time.  "Under the statutory scheme, a distinction exists between a 'determination' and subsequent production."  *Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 188 (D.C. Cir. 2013).  Moreover, "[i]f the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court."  *Id.* at 189; *see also* 5 U.S.C. § 552(a)(6)(C)(i) ("Any person making a [FOIA] request to any agency . . . shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph.").  Thus, a failure to make a "determination" within 20 days—even a repeated failure—already contains a statutory remedy: the right to sue.  It is not properly comparable to the behavior exhibited in *Long* and *Payne*, where the agencies continually and intentionally invoked spurious reasons for nondisclosure.

Rocky Mountain Wild also generally complains that the Forest Service has a pattern or practice of taking too long to produce documents. (ECF No. 38 at 20, 21.) Perhaps in some circumstances this could support prospective injunctive relief, but Rocky Mountain Wild has not assembled a record sufficient to justify it. The basic problem is that "too long" must be judged in the context of the requests submitted. In the digital age, asking for every document potentially related to a particular topic could potentially put millions of documents at issue. Recent amendments to the Federal Rules of Civil Procedure acknowledge this. *See, e.g.*, Fed. R. Civ. P. 26(b)(1) (requiring discovery to be "proportional to the needs of the case"). FOIA has not likewise been amended, but the underlying principle cannot be ignored when faced with a claim that an agency routinely takes too long to produce documents. Here, Rocky Mountain Wild has produced no evidence that the Forest Service's response time has been repeatedly and intentionally unreasonable in light of the requests received and the scope of documents implicated. *Cf. Evans v. U.S. Dep't of Interior*, 2015 WL 5692114, at *28 (N.D. Ind. Sept. 28, 2015) ("Ms. Evans hasn't shown that requesters other than herself have experienced unreasonable delays, pointed to a formal policy adopted by the Park Service that violates the terms of the statute, or shown any other evidence that the Park Service's treatment of her request was sufficiently uniform to be considered an unlawful policy or practice.").

This raises another weakness in Rocky Mountain Wild's pattern or practice claim: Rocky Mountain Wild has been continually vague about the relief to which it would be entitled. Its most specific request is for a declaration "finding the Forest Service has engaged [in] an ongoing pattern or practice of denying Rocky Mountain Wild's right to timely access to agency records created or obtained as part of the Village at Wolf Creek

24

development proposal and land exchange," and a concomitant injunction against "continuing the pattern and practice."  (ECF No. 38 at 24.)  But FOIA already requires agencies to make records "promptly available."  5 U.S.C. § 552(a)(3)(A).  Under the circumstances, Rocky Mountain Wild's request for an injunction would be little more than an injunction "to obey the law, [which is] too vague to satisfy [Federal Rule of Civil Procedure] 65(d)."  *Vallario v. Vandehey*, 554 F.3d 1259, 1268 (10th Cir. 2009) (internal quotation marks omitted).[8]

### E.    Motion for Judgment on the Pleadings

Early in this lawsuit, Rocky Mountain Wild filed a Motion for Judgment on the Pleadings.  (ECF No. 19.)  This Motion was largely based on the erroneous assumption, discussed above, that FOIA requires document disclosure within 20 days.  (*See id.* ¶¶ 29–30.)  Rocky Mountain Wild essentially requested early declaratory judgment "confirming the ongoing violation of Plaintiff's right to timely access," and something like a preliminary injunction: "an order that Defendants provide a lawful determination and release of all agency records not subject to lawful withholding within 10 days."  (*Id.* ¶ 33.)

_____

[8] Rocky Mountain Wild's Response to the Forest Service's Supplemental Summary Judgment Brief—which is effectively a sur-surreply, and the very last substantive brief filed by either side in this matter—requests that the Court remedy the alleged pattern or practice claim by invoking FOIA's "special counsel" procedure.  (*See* ECF No. 50 at 16–17 (citing 5 U.S.C. § 552(a)(4)(F)(i) ("Whenever the court orders the production of any agency records improperly withheld from the complainant and assesses against the United States reasonable attorney fees and other litigation costs, and the court additionally issues a written finding that the circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously with respect to the withholding, the Special Counsel shall promptly initiate a proceeding to determine whether disciplinary action is warranted against the officer or employee who was primarily responsible for the withholding.")).)  If "arguments raised for the first time in a reply may be disregarded," *Ulibarri v. City & Cnty. of Denver*, 742 F. Supp. 2d 1192, 1218 (D. Colo. 2010), then *a fortiori* arguments raised for the first time in a sur-surreply may be disregarded.  Accordingly, the Court will not consider Rocky Mountain Wild's request for a special counsel referral.

Proceedings since then, including the Forest Service's productions and this Order requiring further production, moot the Motion for Judgment on the Pleadings, and it will be denied accordingly.

## F.    Concluding Guidance

This case is intertwined with the 2014 Lawsuit and the APA Lawsuit, both of which are presided over by Judge Daniel.  The undersigned is only cursorily familiar with the ongoings of those two lawsuits, and to the extent the procedures and deadlines established in this Order do not account for the realities of the entire dispute, the Parties may request a status conference to clarify, and potentially modify, their obligations.

The Court recognizes the potential that additional documents produced in compliance with this Order may be nothing more than duplicates of documents already produced in this action, such as e-mails copied to multiple custodians.  The parties are free to work out amongst themselves any protocol that would obviate the need to produce exact duplicates.  Barring that, however, the scope of Rocky Mountain Wild's request and FOIA's broad presumption in favor of disclosure require production of duplicates.  That said, the Forest Service need not re-produce in this lawsuit anything it has already produced, or will produce, in the 2014 Lawsuit or APA Lawsuit.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.    Rocky Mountain Wild's Motion for Judgment on the Pleadings (ECF No. 19) is DENIED AS MOOT;

2.    The Forest Service's Motion for Summary Judgment (ECF No. 36) is GRANTED

IN PART and DENIED IN PART as follows:

    a.    The Motion is GRANTED with respect to the FOIA exemptions claimed on Defendants' *Vaughn* indices filed at ECF Nos. 46-1 and 46-6, and with respect to any document on any *Vaughn* index to the extent withholding was made under FOIA exemption 6;

    b.    The Motion is GRANTED with respect to Rocky Mountain Wild's cause of action for a pattern or practice of FOIA violations (Count 2);

    c.    The Motion is otherwise DENIED;

3.    Rocky Mountain Wild's Cross-Motion for Partial Summary Judgment (ECF No. 38) is GRANTED IN PART and DENIED IN PART as follows:

    a.    The Cross-Motion is GRANTED to the extent the Court has ordered the Forest Service to search for additional documents, and to supplement the *Vaughn* index filed at ECF No. 46-5, all as described above;

    b.    The Cross-Motion is otherwise DENIED;

4.    On or before **March 31, 2016**, the Forest Service shall complete the document searches and *Vaughn* index revisions required by this Order, and shall produce to Rocky Mountain Wild:

    a.    All additional documents responsive to Rocky Mountain Wild's FOIA request;

    b.    A *Vaughn* index specific to any withholdings (in full or in part) from these additional documents; and

    c.    The supplemented version of the *Vaughn* index filed at ECF No. 46-5;

5.      On or before **April 15, 2016**, counsel for Rocky Mountain Wild and counsel for the

Forest Service shall meet <u>in person</u> to discuss in good faith whether the Forest

Service has, at that point, fully discharged its FOIA obligations; and

6.      On or before **April 25, 2016**, Rocky Mountain Wild shall file, on behalf of all

parties, a joint status report setting forth the issues on which the parties agree,

and the parties' respective positions on issues over which they do not agree, if

any.  Based on that status report, the Court will then set additional appropriate

deadlines.

Dated this 29th day of January, 2016.

BY THE COURT:

_____

William J. Martínez
United States District Judge