**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 15-cv-0127-WJM-CBS

ROCKY MOUNTAIN WILD, INC., a Colorado non-profit corporation,

   Plaintiff,

v.

UNITED STATES FOREST SERVICE, a federal agency, and
UNITED STATES DEPARTMENT OF AGRICULTURE, a federal agency,

   Defendants.

---

**ORDER ON DEFENDANTS' MOTION FOR DETERMINATION OF LAW**

---

This is a lawsuit under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff Rocky Mountain Wild, Inc. ("Rocky Mountain Wild") alleges that Defendant United States Department of Agriculture and its subsidiary, Defendant United States Forest Service (jointly, "the Forest Service"), have not properly responded to a November 2014 FOIA request for various documents.  (*See* ECF No. 1.)  Through previous proceedings (*see* ECF Nos. 53, 60, 61), this dispute has been narrowed down to one remaining category of documents, namely, records in third-party contractors' possession that the Forest Service has never seen or relied upon.  The Court invited the Forest Service to file "a motion for a determination of law regarding its FOIA obligations with respect to [those] records."  (ECF No. 61 at 2.)  The Forest Service did so, arguing that it has no duty to search for and disclose such records.  (ECF No. 62.)  For the reasons stated below, the Court agrees with the Forest Services that it has no duty, under the circumstances, to disclose third-party contractors' records that it has

never seen or relied upon.

## I. BACKGROUND

A private entity known as the Leavell-McCombs Joint Venture ("LMJV") owns a parcel of former Forest Service land near the base of the Wolf Creek Ski Area in southern Colorado. (ECF No. 36 at 2, ¶ 1.)[1] In 2010, LMJV and the Forest Service began exploring a land exchange that would expand LMJV's holdings in the region: about 177 nonfederal acres for 205 federal acres within the Rio Grande National Forest near the Wolf Creek Ski Area. (*Id.* at 3, ¶ 6.) Apparently LMJV wishes to create a large ski-oriented development known as "the Village at Wolf Creek." (ECF No. 1 ¶ 3.) The Forest Service therefore began the process of developing an environmental impact statement ("EIS") for the proposed land exchange. (ECF No. 36 at 3, ¶ 7.)

In early 2011, the Forest Service entered into a Memorandum of Understanding ("MOU") with LMJV, the purpose of which was "to document the cooperation between the parties to articulate the working arrangement, conditions and requirements whereby a third-party contractor . . . will be chosen, supervised and directed by the Forest Service to prepare [the EIS]." (ECF No. 36-10 § I.) An entity named Western Ecological Resource, Inc. ("Western Ecological") was selected as that third-party contractor. (ECF No. 62 at 2.) Western Ecological "agreed to abide by the terms of the MOU." (*Id.*) Various terms of the MOU are discussed in greater detail as they become relevant below.

Western Ecological itself, along with thirteen other subcontractors, "played some

---

[1] All ECF page citations are to the page number in the ECF header, which does not always match the document's internal pagination.

role in the environmental analysis." (*Id*. at 3.) The Forest Service has already disclosed all of the documents generated by these third parties that were shared with the Forest Service. (*Id*. at 6.) The Forest Service disclosed some of these documents directly in response to the FOIA request, and additional documents in light of this Court's prior order finding that Rocky Mountain Wild's FOIA request was not limited solely to communications between the Forest Service and third parties, but instead encompassed "all responsive records, including intra-agency communications, but not limited to communications." (ECF No. 53 at 14.)

When the Court made this finding, the Court had in mind intra-agency communications (obviously), as well as, potentially, draft documents that the Forest Service had worked on but never "communicated" (such as through an e-mail attachment) and similar materials. The Court was not aware that its order could be construed to apply to records in third parties' possession that had never been shared with the Forest Service. Nonetheless, the Forest Service, apparently taking a broad view of its potential obligations under the Court's order (and commendably so), learned that such documents exist and disclosed that fact to Rocky Mountain Wild. (See ECF No. 62 at 1 n.1.) Specifically, "[t]here are documents and information created or obtained by [Western Ecological], and there are likely to be similar documents created and held by each of the 13 subcontractors, that relate to the Wolf Creek Project in some way, but have never been shared with any [Forest Service] employee." (*Id*. at 3.)

These documents are the subject of Rocky Mountain Wild's and the Forest Service's remaining dispute. The parties agree that "neither the [Forest Service], nor [Rocky Mountain Wild], can say precisely what is in [this] set of records." (*Id*. at 11; *see*

3

*also* ECF No. 63 at 9.)

## II.  ANALYSIS

The parties' dispute turns on whether the third-party documents are "agency records" within the meaning of FOIA.

### A.  Meaning of "Agency Record"

"Congress undoubtedly sought to expand public rights of access to Government information when it enacted the Freedom of Information Act, but that expansion was a finite one.  Congress limited access to 'agency records,' 5 U.S.C. § 552(a)(4)(B), but did not provide any definition of 'agency records' in that Act."  *Forsham v. Harris*, 445 U.S. 169, 178 (1980) (footnote omitted).  The Supreme Court has therefore construed "agency records" as entailing "[t]wo requirements": (1) "an agency must 'either create or obtain' the requested materials," and (2) "the agency must be in control of the requested materials at the time the FOIA request is made."  *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144–45 (1989).  The Court will analyze each requirement in turn.

### B.  "Create or Obtain"

Quite surprisingly, the case law regarding records in a third party's possession contains almost no discussion of the "create or obtain" requirement.  Courts instead tend to skip directly to the "control" requirement.  One notable exception is *Burka v. U.S. Department of Health & Human Services*, 87 F.3d 508 (D.C. Cir. 1996).

*Burka* involved records generated from a large stop-smoking experiment conducted by the National Cancer Institute ("NCI"), a division of the Department of

4

Health and Human Services.  *Id*. at 510.  The experiment called for a significant amount of phone surveys and paper questionnaires.  *Id*. at 511–12.  NCI contracted with a third party to perform the phone surveys and to gather the paper questionnaires.  *Id*. at 512.  The third party then "created computer tapes of the results," but it never submitted those computer tapes to NCI.  *Id*.

In a FOIA lawsuit to compel disclosure of the computer tapes, the D.C. Circuit held that "the extensive supervision and control exercised by [NCI] over collection and analysis of the data indicates that [the third party] acted on behalf of [NCI] in creating the tapes."  *Id*. at 515.  In other words, according to *Burka*, the "control" requirement can be satisfied to such a degree that the "created" part of the "created or obtained" requirement naturally follows.  This is highly questionable given that the Supreme Court's *Tax Analysts* decision unambiguously treats "created or obtained" and "control" conjunctively—"[t]wo requirements . . . each of which must be satisfied for requested materials to qualify as 'agency records.'"  *Tax Analysts*, 492 U.S. at 144.

By implication, however, *Burka*'s approach highlights a blind spot, so to speak, in the *Tax Analysts* approach.  If "created" is construed strictly to mean "created by an agency employee," then agencies could largely avoid FOIA by delegating tasks to outside contractors, reviewing those contractors' work in a manner that avoids actually "obtaining" any documents (such as through an on-site visit), and then instructing the contractor only to transmit a particular subset of work product back to the agency.  It seems unlikely that the Supreme Court meant to permit such an approach (*Tax Analysts* was not a case about records in a third party's possession).  But if "created"

can have a broader meaning—such as "created at the direction of the agency" or, even broader, "created in the course of fulfilling a contract with the agency"—then the distinction between the "created" requirement and the "control" requirement starts to collapse.

Because the Court finds that the "control" requirement is not satisfied here, as discussed below, the Court need not definitively settle whether the Forest Service can be deemed to have created the third-party records at issue here. Solely for argument's sake, the remainder of this order assumes that the third parties would never have created the records in question but for their contractual relationship with the Forest Service, and in that sense the Forest Service can therefore be deemed the creator of the records.

C.   "Control"

Although *Burka* contains a brief analysis of "created," it is most often cited for certain factors to consider when evaluating "control":

> (1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files.

*Burka*, 87 F.3d at 515 (internal quotation marks omitted).

As an extra-circuit decision, *Burka* does not bind this Court. However, there is no Tenth Circuit authority comparable to *Burka*, and the parties here both treat the *Burka* approach as definitive, if not binding. (*See* ECF No. 62 at 9–12; ECF No. 63 at 10–12.) Under these circumstances, then, the Court will adopt the *Burka* approach as

an aid to evaluating whether the Forest Service "controls" the third-party records for FOIA purposes. Because the first and second *Burka* factors are closely linked in this case, the Court will analyze them together. The Court will then analyze the third and fourth factors individually.

> 1. Factors 1 & 2

The first and second factors turn largely on the significance of certain contractual provisions.

> a. *The Work Product Provisions*

To begin, the MOU and the employment agreement by which Western Ecological was formally hired both contain a requirement stating that Western Ecological's work product "will be considered Forest Service work product owned by the Forest Service." (ECF No. 36-10 § IV.B.iv; ECF No. 63-1 ¶ iv.) This suggests that Western Ecological had little or no intent to retain control over its work product, and that the Forest Service has the ability to access, use, and dispose of Western Ecological's work product as it sees fit.

> b. *The FOIA Provisions*

Rocky Mountain Wild claims that two portions of the MOU express the Forest Service' intent to treat all Western Ecological work product as subject to FOIA. (ECF No. 63 at 2.) The first cited portion, MOU § IV.H, actually obligates LMJV, not Western Ecological, to respond to FOIA requests "within established time frames provided by the Forest Service." (ECF No. 36-10 at 7.) Thus, it has nothing to do with Western Ecological or its subcontractors. Moreover, given that FOIA requests may only be

made to government agencies, not private parties,[2] the language of this provision obviously refers to circumstances where the Forest Service has received a FOIA request and requires the assistance of LMJV to fulfill that request.  It says nothing necessarily about an intent to treat LMJV's (or any other third party's) records as the Forest Service's own for FOIA purposes.

The second cited portion, MOU § V.I, announces that the Forest Service will respond to FOIA requests and may disclose information obtained from third parties:

> If [LMJV], [Western Ecological] or any subcontractors *have provided the Forest Service with business information that would be responsive to a FOIA . . . request*, the Forest Service will provide [LMJV], [Western Ecological] or any subcontractors with prompt notification of any request for that information under FOIA.  [LMJV], [Western Ecological] or any subcontractors will be given reasonable time to assert privilege on information or records considered proprietary under FOIA.  [LMJV], [Western Ecological] or any subcontractors will be notified of the Forest Service's determination regarding disclosure of such records prior to the disclosure date.  The Forest Service retains the right and authority to determine what is releasable in accordance with FOIA.

(*Id*. at 8 (emphasis added).)  This provision only reinforces the notion that information gathered by an agency from third parties may be subject to FOIA.  It does not create a duty to gather such information.

The Court notes, however, another provision that seems to have relevance to FOIA.  Western Ecological's employment agreement states that, "[i]f a legal challenge

---

[2] FOIA applies to "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), [and] any independent regulatory agency."  5 U.S.C. § 552(f)(1).

arises to the Force Service's legal compliance for this Project, [Western Ecological] and any subcontractors, must make available to the Forest Service any information requested by the Forest Service." (ECF No. 63-1 ¶ xvi.) This once again creates a right of access, although not necessarily a duty of access.

      c.    *Evaluation*

The foregoing contractual provisions favor Rocky Mountain Wild on the first and second factors of the *Burka* test. Although not all of these provisions are directly relevant, the Forest Service certainly claims an ownership interest in Western Ecological's and its subcontractors' work product, and it can do as it pleases with those records.[3]

    2.    Factor 3

The third *Burka* factor—the extent to which agency personnel have read or relied upon the document—favors the Forest Service. It is undisputed that Forest Service employees have never seen the records at issue here, and the Court is frankly troubled by Rocky Mountain Wild's attempt to argue otherwise. Rocky Mountain Wild asserts that Forest Service personnel and decisionmakers "relied upon [Western Ecological's] studies, data, and analysis *in the withheld documents*, which were used to create the

---

[3] Rocky Mountain Wild cites *Gilmore v. U.S. Department of Energy*, 4 F. Supp. 2d 912 (N.D. Cal. 1998), which essentially concludes that contractual ownership of the kind present here automatically satisfies all of the requirements for deeming a third-party record to be an agency record. *See id*. at 917 ("Records of a nonagency can become agency records by contract."). Contractual ownership is, of course, an important consideration, but the Court cannot agree with *Gilmore* that it is all-encompassing, at least not here. As for the other case Rocky Mountain Wild cites along these same lines, *In Defense of Animals v. National Institutes of Health*, 543 F. Supp. 2d 70 (D.D.C. 2008), the Court finds it inapposite. *In Defense of Animals* involved records that had been acquired by the government, and which were stored on government property. *Id*. at 76–77. The only third-party relationship involved was a contractor that operated the government facility and kept the records current. *Id*. at 74.

documents required by federal law [such as the EIS]." (ECF No. 63 at 11 (emphasis added).) This is essentially a charge of blatant dishonesty on the Forest Service's part, and it is made without any citation to evidence. Moreover, it contradicts Rocky Mountain Wild's position earlier in its brief. Its "Factual Background" section never disputes the Forest Service's claim that it has never seen or relied upon the third-party documents. (*See id*. at 3–5.) In addition, Rocky Mountain Wild affirms the Forest Service's position by arguing that this Court should not "allow privately funded private contractors to retain sole knowledge of information in documents created and obtained when carrying out the Forest Service's legal mandates." (*Id*. at 9.) The Court can only interpret this unsupported and otherwise contradictory course of argument as an implicit concession that the third factor strongly favors the Forest Service.

    3.    <u>Factor 4</u>

The fourth *Burka* factor—the degree to which the document was integrated into the agency's record system or files—also favors the Forest Service, since these records have never been in the Forest Service's possession and therefore could not have been integrated into its record system. The Court is again troubled by Rocky Mountain Wild's attempt to argue otherwise. It asserts, "A key function of the MOU required contractor records integration into the agency's record system." (*Id*. at 12.) It again cites nothing to support this assertion. Later in the paragraph, Rocky Mountain Wild cites MOU § IV.B.ix, but that section does not support Rocky Mountain Wild's characterization of Western Ecological's duties. Rather, it states that Western Ecological must maintain an index of documents it considered in the decisionmaking process, and must make a "similar and compatible" index of "the Forest Service records," *i.e.*, records the Forest

Service makes available to Western Ecological (not the other way around). (ECF No. 36-10 at 5.)

Rocky Mountain Wild further argues, "It makes no difference that records were not physically maintained in the Forest Service files or databases." (ECF No. 63 at 12.) To the contrary, this makes a significant difference in the fourth *Burka* factor, which inquires whether the records are integrated into *the agency's* record system or files. The fact that records are kept elsewhere is not dispositive because none of the *Burka* factors are dispositive, but it is simply incorrect to say that it "makes no difference."

As with the third factor, the Court can only interpret this misleading and inaccurate course of argument as a concession that the fourth factor strongly favors the Forest Service.

    4.    <u>Additional Considerations & Synthesis</u>

The *Burka* factors are evenly divided in terms of which party they favor, and the Court finds this to be a close question overall. The Court is concerned, like Rocky Mountain Wild, that an agency could employ a third party contractor to insulate itself from FOIA obligations. Ultimately, however, the Court finds that the *Burka* factors and certain additional considerations counsel in favor of finding that the Forest Service lacks "control" over the records in question.

First, there is no indication that the third-party records are anything but peripheral and irrelevant to illuminating the Forest Service's decisionmaking. "The public cannot learn anything about agency decisionmaking from a document the agency neither created nor consulted, and requiring disclosure under these circumstances would do nothing to further FOIA's purpose of 'open[ing] agency action to the light of public

scrutiny.'" *Judicial Watch, Inc. v. Fed. Hous. Fin. Agency*, 646 F.3d 924, 927 (D.C. Cir. 2011) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976)) (alteration in original).

Second, as noted in Part I, above, the Court never contemplated that its prior order regarding the scope of the FOIA request could extend to the third-party records. Rocky Mountain Wild's FOIA request does not obviously seek such records. (*See* ECF No. 36-2 at 2–3.)[4]

Third, the significance of the first and second factors favoring Rocky Mountain Wild is somewhat diminished here. *Burka* and its progeny "have never suggested that ownership means control." *Judicial Watch*, 646 F.3d at 927. Again, *Burka* is not binding, and this Court certainly believes that ownership is *relevant* to control. But at present, the Forest Service's ownership amounts to little more than the *ability* to obtain information, which does not create a *duty* to obtain information. *See Forsham*, 445 U.S. at 186 ("an unexercised right of access" has no FOIA significance). Weighed against the fact that Forest Service employees have never obtained or even seen the records at issue, the Court finds that the Forest Service does not exercise sufficient "control" to make those records "agency records" for FOIA purposes.

---

[4] Rocky Mountain Wild's response brief attempts to argue otherwise, but only through yet another misrepresentation of the record. Rocky Mountain Wild flatly states that its FOIA request "included Forest Service contractors" and then quotes the request's definition of "entity," which includes "contractors" and "any other person acting on the entity's behalf." (ECF No. 63 at 1.) But the FOIA request only uses the word "entity" (singular or plural) as part of specific requests that the Forest Service disclose its communications with outside parties. Thus, the FOIA request certainly included communications between the Forest Service and its contractors, but it was not directed to Forest Service contractors themselves—nor could it have been, given that contractors are not within the definition of "agency." (*See* n.2, *supra*.)

### D. Effect of the OPEN Government Act

As discussed in Part II.A, above, FOIA does not define "agency record." Indeed, the only provision that comes close to such a definition is actually circular, in that it assumes one already knows the definition of "agency record":

> "record" and any other term used in this section in reference to information includes—
>
> (A) any information that would be an agency record subject to the requirements of this section when maintained by an agency in any format, including an electronic format; and
>
> (B) any information described under subparagraph (A) that is maintained for an agency by an entity under Government contract, for the purposes of records management.

5 U.S.C. § 552(f)(2). Rocky Mountain Wild argues that subparagraph (B), which was added to the statute through § 9 of the OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524, imposes a duty on the Forest Service to retrieve all third-party contractor records. The Court disagrees.

For present purposes, two aspects of the amendment are salient. First, it applies only to "information described under subparagraph (A)," or in other words, information that is already an "agency record." Thus, it does mandate a broader treatment of "agency record" than the term has thus far received. Second, if Congress had intended subparagraph (B) to apply to *all* records "maintained for an agency by an entity under Government contract," then it would not have qualified that category with "for the purposes of records management." This latter phrase must narrow the application of subparagraph (B) in some respect.

Cases that have specifically considered the amendment have so far uniformly

13

found that it refers to contracts specifically aimed at managing (*i.e.*, storing, indexing, etc.) information generated by or submitted to an agency. *See Am. Small Bus. League v. U.S. Small Bus. Admin.*, 623 F.3d 1052, 1053 (9th Cir. 2010) ("Here, it is undisputed that Verizon did not maintain the phone records pursuant to a records-management contract with SBA."); *Se. Legal Found., Inc. v. EPA*, 181 F. Supp. 3d 1063, 1087 (N.D. Ga. 2016) (finding subparagraph (B) applicable where the EPA had contracted with a third party to index and track FOIA requests); *Ryan v. FBI*, 113 F. Supp. 3d 356, 363 (D.D.C. 2015) ("This provision primarily addresses the availability of physical documents committed to the custody of a third-party for storage, and does not necessarily impose an affirmative obligation to search for and produce documents in the possession of third party contractors.").

Rocky Mountain Wild claims, however, that a guidance document from the Justice Department's Office of Information Policy supports its interpretation. (ECF No. 63 (citing ECF No. 63-2).) It is not clear whether this is another misrepresentation or simply a failure to read the entire document, but DOJ's guidance is quite the contrary:

> [Subparagraph (B)] addresses the distinct situation where an agency relinquishes possession of its agency records to a contractor for the purposes of records management. In such situations those records remain subject to the FOIA, just as if possession had not been transferred. In other words, when records have merely been removed to the possession of a government contractor for the purposes of records management, those agency records remain subject to the FOIA even though they are no longer in the physical custody of the agency.

(ECF No. 63-2 at 2.)[5]

The Court finds the foregoing interpretations consistent with the language and apparent purpose of the amendment, and therefore agrees with them. In that light, subparagraph (B) does not apply here. Although one of Western Ecological's contractual duties was to keep track of documents and generate the administrative record supporting the EIS (*see* ECF No. 63-1 ¶ ix), it cannot be fairly said that Western Ecological was hired for records management. The primary purpose of the contract was to prepare the EIS itself; document management was only one of many subsidiary tasks related to that purpose. (*See* ECF No. 63-1 at 1 ("[Western Ecological] will serve as the Prime Consultant for the purpose of preparing the EIS analyzing the proposed Village at Wolf Creek Land Exchange. In this capacity, [Western Ecological] will perform [various] responsibilities [including, among numerous others, preparing the administrative record].").) In any event, even if Western Ecological could be deemed to have managed the Forest Service's records for purposes of subparagraph (B), that subparagraph would still only extend to whatever documents the Forest Service sent to Western Ecological, not to documents Western Ecological generated and kept for itself.

The Court accordingly rejects Rocky Mountain Wild's argument that the OPEN Government Act expands Rocky Mountain Wild's FOIA duties in any way relevant to this case.

---

[5] This guidance document is also available at https://www.justice.gov/oip/blog/foia-post-2008-summaries-new-decisions-july-2008 (last accessed Jan. 26, 2017).

### III.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. The Forest Service's Motion for Determination of Law (ECF No. 62) is GRANTED and the Court HOLDS that, in the circumstances presented here, the Forest Service has no duty under the Freedom of Information Act to search for and disclose records in third parties' possession that the Forest Service has never seen or relied upon; and

2. In light of the parties' status report stating that, apart from the dispute resolved in this order, they are prepared to "fil[e] . . . settlement documents addressing the merits of the Freedom of Information Act claims in the next 30 days, followed by a 30-day period to attempt resolution of Plaintiff's fees and costs claims before initiating motions practice" (ECF No. 60 at 1), the parties are ORDERED to file their settlement documents on or before **February 28, 2017**.

Dated this 27th day of January, 2017.

BY THE COURT:

William J. Martinez
United States District Judge